IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| FREE THE NIPPLE – SPRINGFIELD RESIDENTS PROMOTING EQUALITY, JESSICA LAWSON, and AMBER HUTCHISON, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 15-3467-CV-S-BP ) |
| CITY OF SPRINGFIELD, MISSOURI, | ) ) |
| Defendant. | ) |

**ORDER AND OPINION (1) DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF STANDING OR FOR FAILURE TO STATE A CLAIM, (2) DISMISSING COUNT IV WITHOUT PREJUDICE, AND (3) ESTABLISHING BRIEFING SCHEDULE ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs present constitutional and statutory challenges to a recently-enacted ordinance regarding indecent exposure. Defendant seeks dismissal, contending (1) Plaintiffs lack standing and (2) even if Plaintiffs have standing they have failed to state a claim for which relief can be granted. The motion, (Doc. 14), is denied. However, Count IV is dismissed because the Court exercises its discretion to decline supplemental jurisdiction. Finally, Defendant is directed to respond to Plaintiffs' Motion for Preliminary Injunction.

**I. BACKGROUND**

Plaintiff Free the Nipple – Springfield Residents Promoting Equality ("FTN") is "an unincorporated association of both men and women who believe in equality" who "have focused upon the double standards, hypocrisies, and sexualization of the female upper body that underlie government efforts to censor female breasts." (Doc. 2, ¶ 1; *see also* Doc. 2, ¶ 6.) Individual

Plaintiffs Jessica Lawson and Amber Hutchison are residents of the City of Springfield, Missouri, and are members of FTN.

As of August 23, 2015 the City of Springfield ("Defendant") criminalized by ordinance "the showing of the female breast with less than a fully opaque covering of any part of the nipple . . . ." (*Id.* ¶ 2; *see also id.* ¶ 15.) On two occasions in August 2015 Lawson, Hutchison, "and others protested [the] ordinance . . . by marching at Park Central Square in downtown Springfield without shirts, but with their nipples covered, in compliance with the ordinance." (*Id.* ¶ 3; *see also id.* ¶¶ 19-20.) In response, the City Council replaced the ordinance with one that outlaws any "exposure of . . . the female breast below a point immediately above the top of the areola, for the purpose of sexual arousal or gratification or which is likely to cause affront or alarm . . . ." Springfield Ordinance § 78-222(b)(1) ("the New Ordinance"). There are two exceptions. One exception is for "any exposure of the female breast necessarily incident to breast feeding an infant," and the other is for "performances of adult entertainment in compliance with section 10-7." *Id.* §§ 78-222(b)(1), (c).

Plaintiffs present four claims to challenge the New Ordinance. Count I alleges the New Ordinance violates the First Amendment because it curtails Plaintiffs' free speech rights. This claim is premised on the allegation that Plaintiffs' "conduct of exposing the female breast below a point immediately above the top of the areola is intended to convey a particularized message that is likely to be understood by those who view it." (Doc. 2, ¶ 44). Count II alleges the New Ordinance violates the Due Process Clause because it does not adequately explain "when exposing the female breast below a point immediately above the top of the areola is prohibited" so it "authorizes or encourages arbitrary and discriminatory enforcement," and because breast-feeding mothers will have no ability to know how much exposure is "necessarily incident to

2

breast-feeding an infant." (*Id*. ¶¶ 50-51.) Count III alleges the New Ordinance violates the Equal Protection Clause because it "treats women and girls differently than men and boys" and "is intended to perpetuate traditional gender roles." (*Id.* ¶ 54-55.) Finally, Count IV alleges that the New Ordinance conflicts with § 191.918 of the Revised Missouri Statutes, which protects a mother's right to breast-feed her child and declares that municipalities cannot enact ordinances "prohibiting a mother from breast-feeding a child or expressing breast milk in a public or private location where the mother and child are otherwise authorized to be." Plaintiffs argue that the New Ordinance conflicts with (and is preempted by) § 191.918 because it allows for only "infants" to be breast-fed in public.

In support of their claims generally and their Motion for Preliminary Injunction specifically, Plaintiffs allege they plan to participate in additional protests like the ones held in August 2015 that caused Defendant to change its ordinance. They believe that displaying their "mostly nude upper bod[ies]" will "educate others about subtle, state-sanctioned gender inequality." (Doc. 9-1, ¶ 10; Doc. 9-2, ¶ 11.) However, they have expressed a fear of prosecution if they engage in such conduct. (Doc. 2, ¶¶ 35-36, 38; Doc. 9-1, ¶¶ 11-14; Doc. 9-2, ¶¶ 11-14.) Lawson and Hutchison also allege that they breast feed their non-infant children and express milk in public and do not know (1) how much exposure is "necessarily incident" to these activities and (2) whether they can breast feed their non-infant children at all without violating the New Ordinance. (Doc. 2, ¶¶ 32-34, 37; Doc. 9-1, ¶ 15-18; Doc. 9-2, ¶¶ 15-18.)

## II. DISCUSSION

### A. Standing

The Court addresses standing first because "[i]t is well established that standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." *City of*

3

*Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). Standing "requires establishing three elements: (1) that [the plaintiff] suffered concrete, particularized injury in fact; (2) that this injury is fairly traceable to the challenged action of defendants; and (3) that it is likely that this injury will be redressed by a favorable decision." *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–61 (1992)).

### 1.  Lawson & Hutchison

Defendant contends that Lawson and Hutchison have not demonstrated the necessary injury in fact because neither of them have been prosecuted or demonstrated a sufficient fear of being prosecuted.  Neither Lawson nor Hutchison have been prosecuted under the New Ordinance, but the Court concludes they have an imminent injury because (1) they have alleged a sufficient fear of prosecution and additionally (2) with respect to their Free Speech claim, they have been forced to curtail conduct they claim is protected in order to prevent that prosecution.

To satisfy the injury requirement a plaintiff need not plead that an actual injury has already occurred; a threat of injury may be sufficient.   "One recurring issue in our cases is determining when the threatened enforcement of a law creates an Article III injury. When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014).  A person need not violate the allegedly unconstitutional law in order to challenge the law's constitutionality. *E.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007); *Steffel v. Thompson,* 415 U.S. 452, 459 (1974).  Instead, "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Driehaus*, 134 S. Ct. at 2342 (quoting *Babbitt v. Farm*

4

*Workers,* 442 U.S. 289, 298 (1979)); *see also Steffel*, 415 U.S. at 459. "An allegation of future injury may suffice if the threatened injury is certainly impending or there is a substantial risk that the harm will occur." *Driehaus,* 134 S. Ct. at 2341 (quotations omitted).

These concepts have particular application when, as in this case, the plaintiff alleges the deprivation of a First Amendment right. "[T]he plaintiff needs only to establish that he would like to engage in arguably protected speech, but that he is chilled from doing so by the existence of the statute. Self-censorship can itself constitute injury in fact." *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011), *cert. denied*, 133 S. Ct. 61 (2012) (citing *Virginia v. American Bookseller's Ass'n*, 484 U.S. 383, 393 (1988)). "The relevant inquiry is whether a party's decision to chill his speech in light of the challenged statute was objectively reasonable. Reasonable chill exists when a plaintiff shows an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by the statute, and there exists a credible threat of prosecution." *Id*. (quotations and alterations omitted).

Defendant insists the ordinance's existence is not enough to confer standing and argue Plaintiffs cannot establish a credible threat of prosecution because they fail to show any prosecutions have occurred under the ordinance. However, Lawson and Hutchison have alleged more than just the ordinance's existence. They appeared topless in a park with their nipples covered, as permitted by the then-existing ordinance. Plaintiffs allege Defendant changed the ordinance in direct response to this activity for the specific purpose of prohibiting it from reoccurring. Thus, the lack of prosecutions does not suggest an ordinance that has rarely been used; the lack of prosecutions is a function of (1) the recency of the New Ordinance's passage and (2) the fact that the New Ordinance has successfully dissuaded Plaintiffs from engaging in conduct that might violate the New Ordinance. To have standing Plaintiffs need only

5

demonstrate a credible threat of prosecution under the New Ordinance, which the facts of this case establish even without the existence of past prosecutions.

Defendants also suggest that Lawson and Hutchison have not suffered an injury because, for instance, they do not have a right to "protest topless" and their rights to breastfeed are protected by state law. (Doc. 17, p. 2-3.) This argument is unavailing because it essentially contends Lawson and Hutchison lack standing because their claims are not viable. Standing is a jurisdictional inquiry and thus must be resolved before the merits are addressed. *E.g., Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case."); *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 591 (8th Cir. 2009) ("It is crucial, however, not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive."). A party's standing to assert a claim does not depend on the claim's viability.

Lawson and Hutchison have alleged that they intend to engage in conduct that violates the New Ordinance. They have also alleged facts that suggest a credible threat of being prosecuted for violating the New Ordinance if they engage in that conduct. Accordingly, the Court concludes they have alleged an imminent threat of prosecution sufficient to satisfy the injury requirement for standing. None of the other requirements for standing are contested, so the Court concludes Lawson and Hutchison have standing to pursue their claims.

### 2. FTN

Defendant contends FTN lacks standing because it has not identified any members who are aggrieved other than Lawson and Hutchison. This observation is true, but it does not affect

6

FTN's standing because of the Court's conclusion that Lawson and Hutchison have standing. "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 181 (2000) (citing *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343 (1977)); *see also Summers v. Earth Island Inst.,* 555 U.S. 488, 498 (2009) (stating that the Supreme Court's prior cases require "plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm."). Defendant's arguments relate only to the requirement that FTN identify a member who has standing, but this requirement is satisfied because Lawson and Hutchison have standing.[1] Defendant does not challenge the other requirements for organizational standing, so the Court concludes FTN has standing to pursue these claims.

### B. Supplemental Jurisdiction Over Count IV

There is no independent basis for jurisdiction over Count IV: it does not arise under federal law and all of the parties are citizens of Missouri. At best the Court has only supplemental jurisdiction over Count IV because it is "so related to the claims in the action with [the Court's] original jurisdiction that" it forms "part of the same case or controversy under Article III of the" Constitution. 28 U.S.C. § 1367(a). However, "district courts may decline to exercise supplemental jurisdiction over a claim . . . if the claim raises a novel or complex issue of State law . . . ." *Id.* § 1367(c)(1). The Court's exercise of its power to decline supplemental

---

[1] Defendant also suggests that FTN lacks standing because there are no other members who allege standing, and "Lawson and Hutchinson [sic] are adequately protected by the claim filed in their individual names." (Doc. 17, pp. 1-2.) However, FTN need only identify one or more members who have standing, and its standing is not obviated if those members also file their own claims.

7

jurisdiction is discretionary.  *E.g.*, *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1287-88 (8th Cir. 1998).

Evaluating the alleged conflict between the New Ordinance and section 191.918 requires a court to determine the meaning of words in both laws.  There is no case law to guide the Court in this matter.  More importantly, resolving Count IV requires a Court to provide a definitive interpretation of both the ordinance and the statute, but the Court's interpretation would not bind the state courts.  Thus, the Court cannot provide the definitive interpretation necessary to conclusively resolve whether the New Ordinance and the statute conflict.  For instance, Plaintiffs contend they are entitled to relief if the New Ordinance's use of the word "infant" is more restrictive than the statute's use of the word "child."  If the Court concludes the terms mean the same thing and deny Plaintiffs relief, a state court would still be empowered to conclude the word "infant" is narrower than the word "child" and that the New Ordinance is preempted.  Conversely, if the Court concludes the New Ordinance is preempted and grants Plaintiffs relief, that relief will not protect Plaintiffs from a subsequent prosecution if the state courts determine the New Ordinance does not prohibit conduct protected by the statute.  In short, the Court's ruling is not going to provide Plaintiffs with meaningful relief, and the only way they can obtain meaningful relief is if a state court agrees that the New Ordinance and the statute conflict.  That being the case, the Court sees little value in resolving the issue in this forum.

The Court concludes it is preferable to decline jurisdiction and allow these issues of state and local law to be resolved by the state courts.[2]  Accordingly, Count IV is dismissed without prejudice.[3]

---

[2] The parties have not raised this issue.  Nonetheless, the Court is permitted to raise the issue *sua sponte*, *e.g., Porter v. Williams,* 436 F.3d 917, 920 (8th Cir. 2006) (holding trial court may *sua sponte* decline supplemental jurisdiction based on § 1367(c)(3)); *Utopia Provider Systems, Inc. v. Pro-Med Clinical Systems, LLC,* 596 F.3d 1313, 1328-29

### C. Failure to State a Claim

Defendant argues that even if the Plaintiffs have standing they have failed to state a claim for which relief can be granted. When evaluating a motion to dismiss for failure to state a claim the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g., Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013). In making this evaluation, the Court is limited to a review of the Amended Complaint, exhibits attached to the Amended Complaint, and materials necessarily embraced by the Amended Complaint. *E.g., Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697 n.4 (8th Cir. 2003).

#### *1. Count I – First Amendment*

Defendant contends the New Ordinance regulates only conduct not speech and therefore does not violate the First Amendment. Plaintiffs incorporate their arguments supporting their

---

(11th Cir. 2010) (affirming trial court's *sua sponte* rejection of supplemental jurisdiction based on §§ 1367(c)(1) and (2)), and for the reasons stated in the text the Court discerns no need to solicit the parties' input.

[3] The Court's decision to decline supplemental jurisdiction over Count IV makes it unnecessary for it to determine whether FTN has the capacity to assert Count IV. *See* Fed. R. Civ. P. 17(b)(3).

request for a preliminary injunction to contend that appearing topless is protected by the First Amendment because they intend to convey a message.[4] Thus, the question is whether appearing topless is conduct that constitutes "speech" protected by the First Amendment.

"The First Amendment literally forbids the abridgment only of 'speech,' but we have long recognized that its protection does not end at the spoken or written word. While we have rejected the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea, we have acknowledged that conduct may be sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quotations and citations omitted). "In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" *Id.* (quoting *Spence v. Washington*, 418 U.S. 405, 410-11 (1974)) (alterations in original).

Unfortunately, neither party's briefing includes a discussion of whether and when "conduct" becomes "speech," much less applies such a discussion to this case or addresses whether Plaintiffs appearing topless was "sufficiently imbued" with communicative components. Plaintiffs have alleged their conduct was "intended to convey a particularized message that is likely to be understood by those who view it," (Doc. 2, ¶ 44), and the Court certainly credits their allegations about their intent. However, Plaintiffs' conduct is not expressive merely because they say it is; "it is the obligation of the person desiring to engage in assertedly expressive

---

[4] Plaintiffs have expressly incorporated their arguments supporting their request for a preliminary injunction, so the Court's discussion necessarily bears on those arguments. However, that motion is not fully briefed and the Court's discussion should not be construed as a ruling on Plaintiff's motion; the only motion presently before the Court is Defendant's Motion to Dismiss, and that is the only motion being ruled.

10

conduct to demonstrate that the First Amendment even applies. To hold otherwise would be to create a rule that all conduct is presumptively expressive." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 294 n.5 (1984).

As previously stated, the parties have not addressed this issue and Plaintiffs have not had the opportunity to demonstrate that their intended message is likely to be understood by those who view it. Because the Court is not presently asked to award Plaintiffs any relief, the critical point for present purposes is that Defendant has not demonstrated that, as a matter of law, Plaintiffs' conduct is *not* expressive – and for this reason, its request to dismiss Count I must be denied.

### *2. Count II – Due Process*

Defendant's initial Suggestions in Support contend Plaintiffs have failed to state a Due Process claim because (1) the New Ordinance does not address breast feeding and (2) even if it does, it cannot prohibit conduct expressly permitted by § 191.918. (Doc. 15, p. 8.) Plaintiffs (correctly) point out that that Defendant's argument misapprehends the nature of their claim. Defendant then addressed Count II's merits in its Reply Suggestions (Doc. 17, pp. 5-6.) While the Court is generally unwilling to consider arguments presented for the first time in a party's Reply Suggestions, it will do so in this instance.

The ordinance proscribes displaying portions of a woman's breast "for the purpose of sexual arousal or gratification" or in circumstances likely to "cause affront or alarm." The ordinance allows exposure when "necessarily incident" to breast feeding. Plaintiffs (again incorporating their arguments supporting their request for a preliminary injunction) contend these proscriptions are imprecise: for instance, they contend there is no way for a person of ordinary intelligence to know when exposure will "cause affront or alarm" or how much

11

exposure will be considered "necessarily incident" to breast feeding, so citizens do not have fair warning as to what conduct is permitted and what conduct is criminalized. Plaintiffs further contend the vagueness of these terms will permit arbitrary enforcement. (Doc. 2, ¶¶ 50-51; Doc. 16, pp. 8-10; Doc. 9, pp. 14-16.)

"Our cases establish that the Government violates [Due Process] by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement. The prohibition of vagueness in criminal statutes is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law, and a statute that flouts it violates the first essential of due process." *Johnson v. United States*, 135 S. Ct. 2551, 2556-57 (2015) (quotations omitted); *see also Stahl v. City of St. Louis,* 687 F.3d 1038, 1040 (8th Cir. 2012). The phrases upon which Plaintiffs have focused appear to be rather vague, and the New Ordinance suggests no basis upon which a person could determine, for instance, when exposure would cause "affront or alarm." More significantly for present purposes, Defendant has not suggested how the New Ordinance should be understood by persons of ordinary intelligence. Defendant compares the New Ordinance to an Iowa statute that the Eighth Circuit held comported with Due Process. *See Farkas v. Miller*, 151 F.3d 900 (8th Cir. 1998). However, the Iowa statute is readily distinguishable in that it does not contain the terms at issue here, *id*. at 901 (setting forth statute), and the terms in dispute in *Farkas* were held to be sufficiently clear because "[p]ersons of ordinary intelligence would not be confused as to the coverage of the statute's 'theater' exception, or the meaning of the terms 'simulated sex act,' 'public performance,' or 'allows or permits.'" *Id.* at 905. These phrases are clearer than the ones at issue in this case, and the Court cannot hold as a matter of law that the New Ordinance

12

(1) is "clear enough to provide a person of ordinary intelligence with notice of what conduct is prohibited, and (2) provide[s] standards for those who enforce the prohibitions." *Id.*[5] Thus, Defendant's request to dismiss Count II is denied.

### 3. Count III – Gender Discrimination

Count III alleges the New Ordinance violates the Equal Protection Clause because it permits males to reveal parts of their bodies that women cannot. Defendant contends Count III fails to state a claim because the Equal Protection Clause is not violated when distinctions are drawn based on anatomical differences between men and women. Plaintiffs argue that the gender-based classifications created by the New Ordinance do not serve an important governmental objective.

The Supreme Court has "consistently upheld statutes where the gender classification is not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances." *Michael M. v. Superior Court of Sonoma Cty.*, 450 U.S. 464, 469 (1981); *see also Parham v. Hughes*, 441 U.S. 347, 355-56 (1979). Ordinances regulating public exposure (1) enjoy a lengthy history in this country and (2) are within the police powers of states and localities, despite the fact that they treat the exposure of men's and women's bodies differently. *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 567-68 (1991). "Public indecency statutes . . . reflect moral disapproval of people appearing in the nude among strangers in public places." *Id.* at 568. The Eighth Circuit has held that such statutes and ordinances do not violate the Equal Protection Clause even if they prohibit women from displaying parts of the body that

---

[5] It might be suggested that the Court should abstain pursuant to *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941), in order to allow the state courts to determine whether the New Ordinance is amenable to a limiting construction that avoids any potential Due Process concerns. However, the Court declines to consider the issue because no party has suggested such a course and there is time to consider whether abstention is appropriate if and when such a suggestion is made.

men may exhibit. "[T]he city's interests in preventing the secondary adverse effects of public nudity and protecting the order, morality, health, safety, and well-being of the populace are important. The ordinance is substantially related to those objectives, and thus the higher standard [for gender-based classifications] is satisfied." *Ways v. City of Lincoln*, 331 F.3d 596, 600 (8th Cir. 2003) (citing *United States v. Virginia*, 518 U.S. 515, 532-34 (1996) and *Buzzetti v. City of New York,* 140 F.3d 134, 142 (2d Cir.1998)).

*Ways* (which neither party cited) suggests an ordinance of this sort might be constitutional, depending on the purpose for which it was passed.  However, the Court presently has no basis for ascertaining the purpose for which the New Ordinance was passed.  Defendants invite the Court to rely on materials submitted by Plaintiffs in connection with their Motion for Preliminary Injunction, but as stated earlier the Court is confined to review of the Complaint, materials attached to the Complaint, and materials fairly embraced by the Complaint.  In this regard, the Court does not agree that the City Council's minutes are fairly embraced by the Complaint merely because the Complaint references the New Ordinance.  The Court is also not persuaded that the minutes can be regarded as conclusively resolving the issue.  Defendants further intimate that the New Ordinance's purpose is clearly related to order, morality, health, and safety.  The Court declines to draw this conclusion at this time because (1) the procedural posture precludes the Court from making factual findings about Defendant's intent, and (2) the issue of Defendant's intent remains a potential issue in light of Count I.  For these reasons, the Court declines to dismiss Count III for failure to state a claim.

## III. CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss, (Doc. 14), is **DENIED**. However, the Court declines to exert supplemental jurisdiction over Count IV, and Count IV is **DISMISSED WITHOUT PREJUDICE**.

Plaintiff's Motion for Preliminary Injunction remains pending. Defendant did not respond to the motion, opting instead to file its Motion to Dismiss, and the time for responding to the Motion for Preliminary Injunction has expired. Nonetheless, the Court extends the deadline and directs Defendant to respond to the Motion for Preliminary Injunction within twenty-one days of this Order. Plaintiffs shall have fourteen days thereafter to file Reply Suggestions.

IT IS SO ORDERED.

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
DATE: December 28, 2015
UNITED STATES DISTRICT COURT